AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED
JUN 21 2017
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Silver iphone 6s plus A1522
IMEI: 354451063966359

Case No. 17MJ2005

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 952 and 960 | Importation of Methamphetamine and Cocaine |

The application is based on these facts:

See attached affidavit of HSI Special Agent Meaghan Queally.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Meaghan Queally
*Applicant's signature*

Meaghan Queally, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/21/17

Barbara L. Major
*Judge's signature*

City and state: San Diego, CA

Hon. Barbara L. Major, Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Meaghan Queally, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic devices, hereafter referred to as the **Target Device**:

a. Silver iphone 6s plus A1522
IMEI: 354451063966359

as described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section(s) 952 and 960 – Importation of Controlled Substances. This search supports an investigation and prosecution of Marco RODRIGUEZ for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Device** was seized on May 17, 2017 at the Otay Mesa Port of Entry in San Diego, CA. The **Target Device** was seized from Marco RODRIGUEZ pursuant to his arrest for alleged violations of Title 21, United States Code, Section(s) 952 and 960 – Importation of Controlled Substances. The **Target Device** is currently stored at the Otay Mesa Vault, 9777 Via De La Amistad, San Diego, CA 92154.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it

does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), who is assigned to the San Ysidro office under the Special Agent in Charge in the San Diego office. I have been so employed since 2007. As part of my daily duties as an HSI agent, I investigate criminal violations relating to human smuggling and narcotics smuggling. Previously, I spent many years investigating child exploitation and child pornography cases. I have received training from the Federal Law Enforcement Training Center and other law enforcement agencies in the area of narcotics smuggling. I have participated in dozens of narcotics smuggling investigations. I am in routine contact with experts in the field of narcotics and human smuggling investigations. As a federal agent, I am authorized to investigate violations of United States laws and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. In preparation for this affidavit, I have discussed the facts of this case with other law enforcement agents/officers within HSI and other agencies.

6. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

g. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a. tending to identify attempts to import methamphetamine, cocaine, or some other controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, cocaine, or some other controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine, cocaine, or some other controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, cocaine, or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

8. On May 17, 2017, at approximately 8:00 a.m., Marco RODRIGUEZ attempted to enter the United States from Mexico at the Otay Mesa, California, Port of Entry as the driver, sole occupant and registered owner of a 2006 silver Audi A4 bearing California license plate 7TEZ002. During the inspection of the vehicle at the primary booth, Customs and Border Protection Officers (CBPO) noticed that the speaker box in the trunk felt unusually heavy. The officers performed a density measure on the speaker box and received unusually high readings. The vehicle was then scanned by a Z-Portal x-ray which showed anomalies in the rear speaker box. A Human and Narcotics Detection Dog alerted to the speaker box in the trunk of the Audi.

9. A border search of the vehicle revealed 35.36 kilograms (77.95 pounds) of methamphetamine and 25.08 kilograms (55.29 pounds) of cocaine concealed in the speaker box in the trunk of the vehicle.

10. On May 17, 2017, at approximately 12:32 p.m., Homeland Security Investigations (HSI) Special Agents advised RODRIGUEZ that he was under arrest and read him his Miranda rights in the English language. RODRIGUEZ stated that he understood his rights and agreed to answer questions. In part and in summary, RODRIGUEZ denied knowledge of the narcotics concealed in his vehicle. RODRIGUEZ indicated that the narcotics in his vehicle and the cocaine found in his backpack may have been put there by his friend Hannah. He does not know Hannah's last name. Agents allowed RODRIGUEZ to call Hannah during the interview. During that call, RODRIGUEZ asked Hannah to retrieve his casino winnings from a safe at the hotel. RODRIGUEZ indicated that he and Hannah had spent the last two days at Viejas Casino in Alpine, California.

11. After the interview was conducted, CBP Officers found $5,000 cash and 2.92 grams of cocaine in RODRIGUEZ's backpack.

12. The **Target Device** was found on RODRIGUEZ's person. In the agents' presence, as noted above, RODRIGUEZ placed a phone call to Hannah, the person with whom he had spent the prior two days at the casino and the person who he believes must have placed the narcotics in his vehicle and backpack. This leads me to believe that there will be significant correspondence on the phone between RODRIGUEZ, Hannah, and others, associated with the smuggling of narcotics.

13. Drug conspiracies require detailed and intricate planning to successfully evade detection. In my training, education and experience, I have learned that the planning and coordination of a drug conspiracy requires planning and coordination in the days, weeks, and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject via their cellular phone after the arrest to determine the whereabouts of their valuable cargo. Given this, I request permission to search the Target Devices for

evidence dating back to April 17, 2017, up to and including through May 17, 2017.

14. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of Marco RODRIGUEZ, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**.

## METHODOLOGY

15. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software.

Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

18. Based on all of the facts and circumstances described above, there is probable cause to conclude that Marco RODRIGUEZ used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

19. Because the **Target Device** was promptly seized during the investigation of Marco RODRIGUEZ's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by Marco RODRIGUEZ continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from April 17, 2017 through May 17, 2017.

//

//

20. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Meaghan Queally
Special Agent

Subscribed and sworn to before me this 21st day of June, 2017.

Hon. Barbara L. Major
United States Magistrate Judge